All right, I will call the case of Natasha Alvarez versus the School Board of Miami-Dade County. Natasha Alvarez v. School Board of Miami-Dade County, Miami-Dade County, Miami-Dade County, Alvarez v. School Board of Miami-Dade County, Alvarez v. School Board of Miami-Dade County, The substitute process violation here involves an inferior legislative body infringing on property rights with legislation that's outside of its authority, authority derived from a superior legislative body. The inferior legislative body in this case is the Defendant's School Board. The superior legislative body prescribing defendant's authority is the Florida Legislature. The limitations on defendant's authority are in Florida Statutes Sections 1012.22 and 447309. The property rights at stake are the grandfathered salary schedule increases due plaintiffs per Section 1012.22. Counsel, though, haven't we said in Corn that the fact that a municipal official are motivated by parochial views of local interest does not state a claim of denial of substantive due process, and here's the, here's the key part, even if those parochial views contravene state law? Well, first of all, they omitted, they're quoting Greenbrier and they omitted the word may. Greenbrier's. I didn't. I'm sorry, you didn't. Oh, you're talking about Corn omitted the word. Corn omitted, yes, the Corn case. We're allowed to do that. Well, it's purporting to cite Greenbrier's authority for that, and it's not. Greenbrier said may, and the may was really sort of like a dicta there because there was no clear evidence that it did or didn't violate state law. The focus was the parochial interest. Yes. Substantive due process on its head. If we said that any violation of state law automatically becomes a federal due process, right? Isn't that exactly what we tried to get away from in Pate? That's correct, your honor, but, and while I admit that not every violation of state law is a due process violation, the issue here is where are the outer bounds for substantive due process? The quote I gave you, I say in a democratic republic, is the outer bounds. This is legislative action. There are things a legislator can do, and it can't do. The excuse, the justification that the district court used here- Right, but counsel, there are state law remedies for that. For instance, you could have filed a mandamus here. You could have filed a state court action. That doesn't turn it into a federal substantive due process claim because there's a violation of state law, does it? I think you've got it backwards, your honor, with all due respect. You're looking at the remedies versus the claim. Under section 983, exhaustion is not required. The question is whether there's a constitutional violation. Counsel, I fully understand that. So I promise you I'm not confused by that. Well, but you're citing exhaustion avenues as a reason why this shouldn't be a dispute. Counsel, what I'm simply asking is, it seems to turn substantive due process on its head. And exactly what we said doesn't happen if we say that every violation of, every municipal violation of state law automatically causes a claim for substantive due process. And I would agree with you, but this is not a violation of state law. This is a violation of legislative authority. In prescribing the state law for- Well, because- State law derives from the legislation enacted by our state legislature and signed by our governor. No, I understand that. But if it's a violation of, in other words, here you have an inferior legislative body acting in a way that the state legislature, the elected representatives of the state of Florida, said it can't do. Now, for example, if the school board and the union decided that they were fed up with truancy, could they enact a death penalty for truancy? That's deprivation of life without due process of law, because it's not something that they even have the competency- Not because it's a violation of state law, but because killing people is contrary to the constitution without due process of law. Well, but he was saying that what they did in terms of enacting legislation that they had no authority to enact, is the analogy I'm making, is contrary to the constitution because it violates due process of law. But again, the step you're missing there is because it's a violation of state law, it violates the federal constitution. You've agreed with me that cannot be, and it cannot be. And I guess what I'm asking is, Corn seems to not only say that that logically doesn't flow, but it doesn't flow. Well, the distinction I would say is because in Southern Cooperative v. Driggers, the court looked at it from a legislative process angle and said that in that case, and I believe that that is not just, I believe that is controlling authority in this circuit. So Southern Cooperative, though, is executive action, not legislative action. In fact, there, we specifically said, quote, plaintiffs do not challenge the exercise of legislative function. That's at page 1351 of the opinion. They're not changing the legislative function of the county commission's enactment of zoning ordinances. What they were challenging was the legislative action of the board sitting as whether- It's an as-applied action to one person. That's executive action. Right. And we've said that executive action does not have a substantive due process component. But this is not executive action. Right. Right. We agree, but I don't see how Southern Cooperative can apply, because that is an executive case applying zoning to a specific individual. And we've said that substantive due process doesn't apply. There isn't a substantive due process claim for arbitrary and capricious action there. It only applies to legislative. And as to legislative, we said in Corn, that a municipal official, even if it's done something a violation of law, does not create a substantive. The emphasis in Corn was on the ill motive. And we're not saying there's ill motive here. But the emphasis in Southern Cooperative was exceeding legislative authority. In Southern Cooperative, what they said was they had a rational reason for denying the application because the public was opposed to it. That's the sort of anachronistic legislation that the due process clause is meant to prohibit. In this case, the Florida legislature said, you have to have a grandfathered salary schedule by July 1st, 2014. And you have to apply it thereafter. And the Miami-Dade School Board said, we have a better idea. We don't like that statute. We're gonna do something completely different. And I can illustrate just how different they did it, with your honor's indulgence. There's one section, one point in time, where they went to what they called the min-max schedule, okay? They took what was a salary schedule with 22 or 23 steps. The 2013-14, I believe, had 22 steps. The statute said you had to use that grandfather, that schedule, as of July 1st, 2014, for employees hired on or before that, I'm sorry, before that date, for employees hired on and before that date, you had to, if they got a performance evaluation of expectation or exceeds expectation, a percentage of the greatest differential on that salary step schedule. So- Assume with me for the moment that a substantive due process, that a violation of law isn't of itself unreasonable. That you have to show that the actual municipal action is unreasonable. Do you agree that the decision made by the county here to enter into a collective bargaining agreement and create labor peace for the county and to give all teachers a specific contract is a rationally related reason for making that decision? It's a school board, your honor, but I get what you're saying. The school board cannot use collective barring to justify exceeding its powers. If the school board in the union agreed to pay less than the minimum wage, that could not be allowed. Right, that'd be a violation of FLSA. Right, but here we have more than just- It's rational, though. But FLSA doesn't specify legislative power. Our argument is that- FLSA is a federal statute. Correct, but my point is that the distinction between a mere breach of the law and a violation of legislative authority here is that 101.22 changes entirely the system by which the state said school districts have to pay their teachers. We have anarchy if school districts can say we have a better idea, we don't like that idea. In the case of the min-max schedule, what they said was we're going to do away with salary steps altogether, okay? And we're going to just specify the minimum salary and the maximum, and then everybody is going to get an across the board percent increase we agree with with the union. Well, first of all, if you're going to pay teachers hired on and after July 1st, 2014 according to the greatest differential on that schedule, it presumes that there's going to be some differential, they've eliminated differentials. Then it says that you're going to get performance pay increases to those teachers year on year without limitation. They've instituted a limitation, they've put a cap. I mean, it goes on and on. There's all sorts of ways in which the salary schedules that were adopted post-July 1st, 2014 don't comply with the law. But the biggest takeaway is the law says you have to have some salary schedule in effect as July 1st, 2014 as your grandfather's salary schedule, and the word grandfathered is well understood. Council, what I'm just having trouble with is even assuming, and the district court here assumed a violation of law, how that becomes automatically a violation of your client's substantive due process rights. Because the Dade County Public School Board did not have any power to adopt these salary schedules. They had to have- It may not have, but how does that violate your client's federal substantive due process rights? Because in the legislative process of deliberating, deciding, and voting for a salary schedule, they completely ignored the fact that they had no power to do that. And that is where the substantive due process comes in. If you look at the district court's decision, it says that the reason why it's making it, the court concludes that plaintiffs cannot show that defendant's implementation of a variance of the grandfathered salary schedule lacks a rational basis. From that, we can conclude two things. One is that the court agreed that by operation of law, the 2013-14 salary schedule is the grandfathered salary schedule. It assumed it without deciding. I'm sorry? It assumed that without deciding. Assumed it without deciding. And then two, defendant grandfathered, but instead varied from it. So, in other words, you can, as a legislative body, you can exceed your legislative powers as long as you have a good reason? I mean, the variance here is not a technical variance. The problem is, it's not a violation of substantive due process. I mean, that's what the problem is, because it's a state law. It's not a violation of federal substantive due process. Well, federal substantive due process applies to both violations by state subdivisions and the federal government, and it can apply to where there's a violation. But here, why is it not, I mean, then we get back to the whole rational basis thing again. I mean, it seems like you have a problem there. Our answer is that there's no rational basis because legislative powers that are not delegated by the state cannot be exercised by the school board. But that would make every single state violation automatically a federal substantive due process violation, and that can't be. I mean, the case law is pretty clear on that. I don't agree with that. That unnecessarily follows. I mean, we have here that it's not simply a violation. We have a legislature with very prescribed powers. Okay, the school board cannot just implement payment of teachers any way it likes. The basis for paying them is specified in law, and then it has discretion as to how to do that. It didn't say you have to have this salary schedule or that salary schedule by July 1st, 2014. It said you had to have a salary schedule by July 1st, 2014, and you have to grandfather it. If you continue to ignore, not just that law, but that prescription on enacting new and different terms for your constituency, that is a violation of substantive due process. Can I ask you before you sit down, so I'm the one person not from Florida on this panel. I mean, does this go on in other school districts? Did other school districts? Well, I haven't a recent complete survey of this, but the statute was passed in 2011. School districts had a little more than three months to get into line with the statute. Some did, some didn't. Most at the time of the passage of the statute, there was a mix of whether they followed the law or not. Some have fallen off. I believe it's because they've seen what Miami-Dade County, frankly, has been able to get away with. Broward County, for example, first started following the law and then didn't. I think Miami-Dade County tried to apply the existing salary schedule, but then decided for whatever reason to go with this min-max schedule instead. It's been interesting to see, but the point is that there was a fundamental change. I mean, understand that 101 2.22 is not just a speeding law or a zoning law. This made a fundamental policy change in the education system in the state of Florida. One of the biggest ones was teachers would no longer be advanced on a tenure track, but instead would get performance pay. And that there were certain other things that it did. But it also, it left to the school boards to say what that compensation would be going forward. So your answer is, you don't know. Well, the short answer is I know that there was compliance. I don't have a recent survey for you, your honor. I mean, there was universal compliance? I would say it wasn't universal. Okay. I would say it wasn't universal. And that's another thing that- You reserve some time for rebuttal. Section 101 2.2 doesn't have a remedy section. And we don't know if we have a state law remedy. Also, we don't know what- You're out of time. Reception we'll get in state court. You're out of time. You've saved some time for rebuttal. I'll save for rebuttal. Thank you very much. Mr. Frager? I apologize. May it please the court, it's David Miller for the Miami-Dade Public Schools. Let me start by reinforcing the main point that has been discussed here so far this morning. And that is corn says what it says. Greenbrier says what it says correctly. Can I ask you a question? Yes, ma'am. Just for this hypothetical, assume that we conclude that there was a violation of the state law. What would the remedy then be? How would the teachers be able to, well, how could we avoid having school boards with impunity violate the state law? I would answer that first by saying that if you conclude that there's a violation of the state law, and I assume that's what you're saying, not a violation- That's the hypothetical. Process. If you assume that there's a violation of the state law, I would say, number one, you don't have to get there because the district court found a rational basis. And that's all it takes is a rational basis. And not even a real rational basis, just a conceivable rational basis. I guess my question is a little different than that. And, you know, maybe it's not a due process question. But how does the school board avoid being able to violate the state law with impunity? Is there any action that the teachers could take? Certainly. And I believe this was pointed out by one of the panelists as well. There may well be a myriad of state law actions that could be or could have been brought. And, of course, there were several state law claims made in this case that were dismissed without prejudice and are still floating out there. And so the problem with this case is the claim that is attempting to be stated here, substantive due process. And, of course, procedural due process is just out of the ballpark altogether. But it just does not fit. These facts do not fit the claim that has been attempted to be brought. There is no substantive due process violation here. Maybe there's something else. Certainly, we've got arguments against those. But the plaintiffs have chosen their forum. They have chosen their claims. And they have chosen the wrong ones. Is there a remedy? Were it eventually found that the public schools applied this in the wrong way or somehow violated the law or it should have been done this way instead of that way? Maybe there is. And I'm sure that counsel is creative enough to come up with that. I guess I'm asking you, what is the remedy if that's found? Well, the remedy might be any of a number of things. Certainly, there are. And now we're getting way outside the four corners of the complaint, obviously. I understand. But indulge me if you don't. There are setoffs. There are other payments that have been made in the meantime. There may well have to be, if worst case scenario, and I'm loathe to say this just as an advocate, but if we lose in the end, there might be back pay obligations. You might have to unwind things that have been done. But in the end, it's a matter of money. It's money damages. It's a back pay issue. This is not a Gordian knot. This is something that could be unraveled. Thank you. So to emphasize again, back to that first point, Korn and Greenbrier, they say what they say. There's a case out of the Fifth Circuit, and if you follow these many, many sites in these many, many cases, they all seem to be property cases for some reason or other, most of them. But you end up or you find a case called FM Properties versus City of Austin out of the Fifth Circuit, and the court in that case said this, an incorrect interpretation of law does not make a government's action irrational under the rational basis test. Even a violation of state law is alone insufficient to state a constitutional claim under the 14th Amendment. And all the way back to the Supreme Court in Village of Euclid, in 1926, said if the question of the validity of the legislative act is debatable, there's no substantive due process test. What the appellants are asking this court to do is not only stand rational basis on its head, as was put by one of the panel, but to create a whole new element in the rational basis test, and I would submit even raise the level of scrutiny. Rational basis, of course, is the lowest level of scrutiny, highly deferential, but if there is a threshold question, did the legislative act violate some other law, that raises the level of scrutiny from extreme deference to something a little higher than extreme deference, and overrules decades of 11th Circuit jurisprudence and even Supreme Court jurisprudence. Again, the cases are rife with references starting with the Supreme Court and down through one of the more recent 11th Circuit cases, Kentner, that say we're not going to open the floodgates of substantive due process by saying that any time a rule or an ordinance or a state law is violated, that is going to automatically get you a substantive due process violation. Can I just, I'm just curious, I mean, we're all here now, regardless of, you know, the posture of the case. So it looks like to me you were given a deadline, July 1st, 2014, and in your view, you didn't miss that deadline or, you know, because you did this grandfather salary schedule? Is that what happened? That is not what happened. We have candidly admitted that the deadline was missed by a few months. The deadline of July 1, 2014, was there for school districts statewide to adopt a grandfathered schedule, and I will tell you. Right, and you just didn't get it done. Again, of course, outside the four corners of the complaint, we didn't get it done because the collective bargaining was very, very difficult, made difficult, frankly, by this statute and the difficulty of interpreting it. The statute is not clear. Again, way beyond the... But the deadline's clear. The deadline is clear, but how exactly that's supposed to work is far from clear. There was a statewide task force that met for years that was chaired by the superintendent of this school board trying to figure out how this thing was supposed to work as the legislation was being developed. That led to difficulty. Within a few months, we did adopt a grandfathered schedule. How did it go across the state? I'm here to be educated. That's an interesting thing about this statute is that it has different applications depending on which one of the 67 different school districts in the state that you're talking about. Again, I have to preface this by saying this issue is not before this court. I know, I know, but I'm just curious. I mean, is Miami-Dade... Are you the only one that missed the deadline, or were there others, or do you know? I have to candidly say I don't know, but the interesting thing about it is that there was no prescription from the state how or what to grandfather. It was just whatever you guys come up with is what's going to be the grandfathered schedule. What you designate, what you adopt in the language of the statute is going to be the grandfathered schedule. That points up the idea that whereas appellants want this one chart of pay levels to be frozen in amber forever, that's not really how this legislation is structured. The legislation grandfathers whatever was the previous legal reality, the previous legal regime, and from then on, and those people stay in that reality, from then on there's a different reality that's going to be pay for performance, that's going to have percentage increments between pay increases, that's going to have all of these other standards that were referred to. Those things are not going to apply to the grandfathered folks. What's going to apply? The legal reality, the legal reality that existed at the time was not just a pay schedule or even a method of coming up with pay schedules. It also included significantly the Florida constitutional right to collective bargaining and the Florida statutory commands on collective bargaining if you happen to be in a district where the teachers are unionized, which is most of them. That always subjected these salary schedules to change over time through the collective bargaining process. If you freeze this in time, which is what appellants want, if you freeze it on this one list of salary levels, then you are taking away the ability to collectively bargain those forever and ever. Well, that was decided by the Florida Supreme Court in 1981 in the city of Tallahassee case. The legislature cannot remove an entire subject of terms and conditions of employment from the sphere of collective bargaining. Back then they tried to do it with pension. They said, can't bargain over pension. Florida Supreme Court said no. The collective bargaining rights of public employees are exactly the same as those in the private sector and in the private sector they can bargain over pension with the exception of no strikes. If we freeze that salary schedule the way that appellants want and then the union and the employer want to bargain over that schedule, let's change those levels. Let's make step 23 is going to be a $1,000 raise instead of whatever it is. They're going to be violating 10-12-22 the way appellants interpret it, but you're going to run the Florida Constitution up against 10-12-22. Since it's a constitution, the constitution is going to win. That interpretation is what the district judge said in his aside is probably an unconstitutional interpretation. I guess the last thing that I would address, and it really hasn't been a subject of discussion here, is the appellant's continued attempts to state a procedural due process claim. Now, I don't think it's being given much credence, but the attempt is difficult to understand. As I do understand it, the appellants are saying that, well, because there was no resort by the school board to this somewhat obscure provision of state labor law, which is 447.309, and because the school board did not go to the state and say, hey, we need to proportionately reduce all of our raises because we're short of funding, which didn't happen because they weren't short of funding. And then number three, because they didn't get to speak at the time before the collective bargaining agreement was adopted by the school board, which is the legislative act that we're talking about. That those three things somehow or another combine and make what's been admitted to be a legislative act somehow combine and create the ability to state a procedural due process claim. I don't understand how that works. The court's pronouncements on this are pretty much absolute. Legislative act, no procedural due process claim. And I don't see how these other things can somehow bootstrap that into a procedural due process claim. So I'll let that go with that. And the word bootstrap suggests to me the last point that I will make, and that's this, and it again returns to what really is the central question of this case, as everybody here has recognized. If the violation via a legislative act of a local ordinance or any other law automatically bypasses the rational basis test, then in the words of one judge, I believe this was in Eighth Circuit, another land use case, said, well, you can erase the distinction between state law and federal law, and the federal courts of appeals are just going to become zoning boards. And that's what's being suggested here. Thank you, Your Honor. Thank you. Oh, and I got the little thingy here. I mean, I think this was a good idea, but I'm not sure it's a successful idea at the end of the day. It seems like it might cause more handling of the microphone. One more time. Very good. Thank you, Your Honor. A few quick points. First, as far as distinguishing from Corn and distinguishing this as a violation of law, a distinguishing feature that was not in the other cases cited is that there's a public-employee collective bargaining. Any provision of agreement in conflict with state law shall not become effective. So what we have here is an ultra-virus act. We don't have simply a violation of law. The path that they took should not be effective. Controlling state law shall not become effective. It's a violation of a second state statute. Well, it's a violation of state statute that not only makes it just a violation of law, but specifies that what they did was ultra-virus. In other words, 447-3093 doesn't allow collective bargaining to be a reason for violating the law or going past legislative authority. If the rational relationship test says, as long as you have a good reason for it, it doesn't matter if you've exceeded legislative authority, then there's no check on legislative authority. The federal courts are in the position to do that for both the state and the federal level. We fought a civil war over this. The 14th Amendment, 28 U.C. section 1983, is designed to make sure that no government exceeds its authority. As far as derogation of collective bargaining, the constitutional argument, I have something to say about that. But I first want to rebut the argument that they did grandfather its house schedule. Nothing has been grandfathered. They bargained year to year on changing the terms of the salary schedule, and the salary schedule conversation. Understand that the statute itself defines the salary schedule as prescribing base salary. Only base salary. So the first part is the case that counsel referred to was superseded by a second case, Scott v. Williams, where the Florida Supreme Court said that laws that limit but do not completely prohibit a subject of collective bargaining are not in conflict with the right  Section 101.2 only grandfathers, as I said, base salary levels. Bargaining over total compensation remains. The statute itself, 101.2.2.2, defines salary schedule as the schedule or schedules used to provide base salary. It then goes on to define adjustments as an addition to the base salary levels. It defines supplements as an annual addition to base salary. It also provides for awards and incentives and gives the school board's discretion to have beyond the mandatory salary supplements, other salary supplements. So you can think of the salary schedule as like a minimum wage or something that provides a floor but not a cap. So that covers the authority of defendants to pay more. What about paying less? Does grandfathering a base salary schedule make it impossible to react when economic circumstances make paying the schedule salaries impossible? No. First, the legislature encouraged collective bargaining over a period of more than three years for school districts to anticipate what they wanted as their base salaries. Any collective bargaining agreement with public employees in Florida can only have a maximum term of three years. By making the law effective more than three years later, they covered everyone in the state to be able to renegotiate as they saw fit. Second, adjusting for budgetary shortfalls is baked into the statute. Per the last sentence of 101.221C, it says the grandfathered salary schedule may be adjusted downward due to budgetary constraints as long as they are necessary and proportional. So, again, it's a check on their authority, but it allows them a great deal of leeway in terms of, well, you know, we know we put in the base salaries here, but now, unfortunately, in certain circumstances, we don't have the money. And finally, per 447.3093, which is not an obscure provision, I mean, it's a part of Florida public employment bargaining law, the superintendent of schools can submit to the legislature for an exception for any collective bargaining provisions that the school board feels it needs that would otherwise be in conflict with state law. So that's at least several ways where the floor is not immutable. It's just a salary schedule floor that has adjustments upward and, if necessary, adjustments downward. And the proof of that, I mean, the legislative history is rife with statements from the Florids that as far as that was the intent. Mr. Frayer, your time's up. You need to wind up your argument. I'm sorry. Anyway, that was all I had, unless anyone has any more questions. All right. I think we've got time. I appreciate the court's time. Thank you. That concludes our court for today. We will be in recess until 9 o'clock tomorrow morning. Thank you.